1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   DEBRA GRAHAM,                    )   No. ED CV 04-885 PJW
                                      )
11                   Plaintiff,       )
                                      )   MEMORANDUM OPINION AND ORDER
12              v.                    )
                                      )
13   JO ANNE B. BARNHART,             )
     COMMISSIONER OF THE SOCIAL       )
14   SECURITY ADMINISTRATION,         )
                                      )
15                   Defendant.       )
     _____)

16

17                                    I.

18                               INTRODUCTION

19        Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and

20   1383(c)(3), seeking reversal of the decision by Defendant Social

21   Security Administration ("Agency") denying Supplemental Security

22   Income ("SSI") benefits.  Alternatively, she asks the Court to remand

23   the case to the Agency for further proceedings.  After reviewing the

24   record and for the reasons discussed below, the Agency's decision is

25   AFFIRMED and the case is DISMISSED.

26

27

28

II.

BACKGROUND

Plaintiff was born on March 30, 1961, and was 43 years old at the time of the administrative hearing.  (AR 13, 49.)  She has a high school education, and has past relevant work as a prison guard, clerical worker, sales attendant, and box-person.  (AR 13, 70, 75, 83.)

Plaintiff filed protectively for SSI benefits on September 27, 2002, alleging disability since September 20, 2002.  (AR 12, 49.)  The cause of her alleged disability was fibromyalgia, fatigue, hypertension, tendinitis, bursitis, and depression.  (AR 13, 69.)  After the Agency denied Plaintiff's disability claim initially and on reconsideration, she timely requested a hearing before an administrative law judge ("ALJ").  (AR 31-40.)

A hearing was held on December 15, 2003.  (AR 259-69.)  Plaintiff appeared without counsel, and waived her right to proceed with representation.  (AR 269-60.)  The hearing commenced, and Plaintiff testified.  (AR 261-65.)  Joseph Mooney, a vocational expert, also testified.  (AR 266-69.)

Plaintiff confirmed that she had not worked after her alleged onset date, and explained that she and her husband subsisted on SSI payments that he received for a disabling back impairment.  (*See* AR 261.)  She told the ALJ that her husband began receiving disability payments in 2002, the same year that she filed her application for SSI.  (AR 262.)

As to her disability, Plaintiff stated that her "whole body"-- every joint, muscle, and bone--was "constantly in pain."  (*See* AR 262.)  As a result of this unremitting pain, Plaintiff claimed to be

2

1  "unable to think clearly." (AR 262.)  Aside from this pain, which she

2  insisted had "worsened," Plaintiff stated that she had no disabling

3  limitations. (*See* AR 262, 265.)

4      Plaintiff also described her activities. (*See* AR 262-63.)  She

5  stated that she spent most of her days in bed watching television.

6  (AR 262-63.)  She admitted that she would "try" to cook "basic" meals,

7  but stated that her two adult sons did most of the cooking. (AR 262-

8  63.)  She added that she would do "some" household cleaning, such as

9  vacuuming, washing dishes, and laundry, but denied mopping, sweeping,

10  or making her bed. (AR 263.)  She estimated that she could carry

11  "[a]bout five pounds at most," and stated that she could stand "about

12  15 minutes at most." (AR 263.)

13      Finally, Plaintiff summarized the extent of her medical

14  treatment. (*See* AR 263-65.)  She explained that she was seeing Dr.

15  Bruce Koyle, M.D., her family practitioner. (AR 264; *see also* AR 15.)

16  Plaintiff also stated that she had received treatment for her

17  fibromyalgia from Dr. Jennifer Smith, a neurologist. (AR 264-65.)

18      The ALJ next heard the testimony of Joseph Mooney, a vocational

19  expert. (*See* AR 266-69.)  He described Plaintiff's previous jobs as

20  ranging from unskilled to semi-skilled, light to medium. (AR 266-67.)

21  The ALJ then posed the following hypothetical question to this expert:

22      Assume a hypothetical person of the same age, education and

23      work experience as [Plaintiff].  Further assume the person

24      could perform a full range of sedentary work.  She can

25      occasionally reach distant from her body.  She cannot work

26      overhead, or in temperature extremes or around heavy vibration.  She c

27

28      dangerous machinery.  She cannot work in environments having

3

1    noxious fumes, smoke or high levels of gas.

2    (AR 267.)   The ALJ assumed, without asking the vocational expert, that

3    this person could not perform any of Plaintiff's prior work.   (*See* AR

4    267.)   Instead, he asked this expert whether there were "any jobs in

5    the national economy the person could perform?"  (AR 267.)   The

6    vocational expert responded affirmatively, opining that a person with

7    these limitations could work as an assembler, hand-packager, and

8    table-worker, all jobs that existed in significant numbers in the

9    national economy.  (AR 267-68.)

10       The ALJ informed Plaintiff that he would be corresponding with

11   "one or more" of her doctors, and stated that he would hold the record

12   open.  (AR 268.)   He then adjourned the hearing.

13       On April 22, 2004, the ALJ issued his decision, analyzing

14   Plaintiff's claims under the Agency's five-step sequential evaluation

15   process.  (AR 12-22.)   At step one, the ALJ found "no indication that

16   [Plaintiff] has engaged in any substantial gainful activity since the

17   date of filing of her application for [SSI]."  (AR 13.)   Accordingly,

18   the ALJ proceeded to the second step.

19       At step two, the ALJ found that Plaintiff suffered from

20   "fibromyalgia, osteoarthritis of the IP joints of both thumbs, and

21   bursitis and tendinitis of the right shoulder, impairments which can

22   cause significant vocationally relevant limitations."  (AR 13.)

23   Although the ALJ did not state expressly that he considered

24   Plaintiff's limitations to be "severe" within the meaning of the

25   regulations, the ALJ implicitly so found when he reached step three of

26   the sequential process: where he concluded that "the evidence does not

27   contain the appropriate clinical or laboratory findings to establish

28   that she has an impairment or combination of impairments which either

4

1  meet or equal" a Listing.  (*See* AR 13.)

2      Accordingly, the ALJ assessed Plaintiff's residual functional
3  capacity in light of the medical evidence.  (*See* AR 13-16.)
4  Ultimately, he adopted the same limitations he had posed to the
5  vocational expert in his hypothetical question at the hearing.  (*See*
6  AR 16; *see also* AR 267.)  The ALJ acknowledged that the sedentary
7  limitation in his assessment of Plaintiff's residual functional
8  capacity was more restrictive than that advanced by the Agency's
9  examining physicians, but explained that the additional limitation was
10  warranted based on "additional evidence received into the record at
11  the hearing."  (AR 17.)

12      Based on this assessment of Plaintiff's residual functional
13  capacity, the ALJ reached the fourth step of the sequential process.
14  At step four, the ALJ found that Plaintiff could not perform any of
15  her past relevant work.  (AR 20.)  At step five, however, the ALJ
16  accepted the vocational expert's testimony that Plaintiff could
17  perform the sedentary work of assembler, hand-packager, and table-
18  worker.  (*See* AR 20; *see also* AR 267-68.)  Accordingly, the ALJ
19  concluded that Plaintiff was not disabled.  (AR 22.)

20      Plaintiff timely requested review of the ALJ's decision.  (AR 6-
21  7.)  The Appeals Council denied review on June 1, 2004, however, and
22  the decision of the ALJ became the final decision of the Agency.  (AR
23  3-5.)  Plaintiff then obtained the assistance of counsel, and filed
24  her Complaint in this Court.

25

26

27

28

III.

STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either confirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003) (applying the harmless error standard).

6

1                                    IV.

2                               DISCUSSION

3        Plaintiff claims that the ALJ erred in two respects.  First, she

4   contends that the ALJ failed to give appropriate weight to the opinion

5   of her treating physician, Dr. Koyle.  (*See* Joint Stip. at 3-7.)

6   Second, Plaintiff faults the ALJ for ignoring the Daily Activities

7   Questionnaires completed by one of her sons and by a friend.  (*See*

8   Joint Stip. at 11-12.)  Both of Plaintiff's specific substantive

9   arguments will be addressed below.  After considering her claims,

10  however, the Court concludes that neither has merit.

11  A.   The ALJ Gave Sufficient Weight To The Opinion Of Plaintiff's

12       Treating Physician

13       Plaintiff complains that the ALJ "improperly considered" the

14  opinion of Dr. Koyle, her treating physician, and specifically argues

15  that "[t]he reasons that [the ALJ] has given to reject this important

16  opinion are not 'legitimate.'" (Joint Stip. At 7.)  The Court

17  disagrees.

18       Before reaching the merits of Plaintiff's challenges to the ALJ's

19  handling of this evidence, the Court must first address the impact of

20  the ALJ's finding that Plaintiff was not credible: a finding that

21  Plaintiff does not challenge.  "Credibility determinations are the

22  province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

23  1989).  For that reason, this Court will not second-guess an

24  unchallenged credibility finding.  *See Solomon v. Secretary of Health*

25  *and Human Services*, No. 91-CV-77171 DT, 1992 WL 478586, at *2 (E.D.

26  Mich. Aug. 13, 1992)("The Plaintiff has not challenged the ALJ's

27  determination of her credibility, and the Court accepts it as

28  accurate.").

                                     7

Two important implications stem from this result.  First, where a claimant fails to challenge the ALJ's adverse credibility finding, she cannot "show that the ALJ erred in her decision not to credit [the treating physician's] assessment, which was based in large part on [the claimant's] statements." *See Siska v. Barnhart*, No. C 00-4788 MMC, 2002 WL 31750220, at *3 (N.D. Cal. Dec. 4, 2002).  Second, a claimant's failure to dispute the ALJ's finding that her testimony was incredible means that, to the extent that *any* of her arguments rely upon citations to her own testimony or statements in the record, that argument "carries no weight." *See Stanistreet v. Chater*, 21 F.Supp. 2d 1129, 1135 n.15 (C.D. Cal. 1995); *accord West v. Barnhart*, 254 F.Supp. 2d 1216, 1227 (D. Kan. 2003)(holding that, where the "ALJ determined plaintiff's testimony is not credible and plaintiff does not challenge that finding, plaintiff's testimony that her sitting capacity is severely limited is not sufficient to negate the ALJ's [residual functional capacity] finding").

The thrust of the ALJ's adverse credibility finding was that Plaintiff was an obvious malingerer who had exaggerated her condition and manipulated the results of diagnostic tests in order to convince doctors that she suffered from disabling impairments.  He explained:

> Mental status examination revealed [Plaintiff's] eye contact was good and speech was normal in rate, flow and tone.  She reported experiencing auditory hallucinations and delusions, and she believes she is being followed and watched by others.  Despite this, [her] thought processes during the testing appeared to be without disruption and she did not appear to be responding to internal stimuli.  The examiner noted that feigning of symptoms was strongly suggested.

1    Malingering during testing was indicated.  Her intelligence
2    was estimated to be in the low average to borderline
3    deficient range.  The information she provided appear[ed] to
4    be of questionable validity, as she appeared to have
5    excessively exaggerated her problems.  Effort expended on
6    the testing appeared to be minimal, and malingering was
7    suspected.  On the Rey 15 Item Test, [Plaintiff] completed
8    nine of fifteen figures, although the figures were not
9    ordered properly.  As such, malingering during testing was
10   thought to be present.  Malingering was strongly suspected
11   on the Wechsler Memory Scale rating.  [¶]  The examiner
12   noted that [Plaintiff's] responses on the Structured
13   Interview of Reported Symptoms indicated she severely
14   exaggerated her problems.  She indicated severe symptoms of
15   depression and psychosis.  Her psychotic symptoms included
16   symptoms that would only be neurologically induced, either
17   by drug addiction or brain injury.  Inconsistency in her
18   reported symptoms was also present.

19   (AR 15.)  The ALJ also noted the absence of treatment evidence that
20   would substantiate Plaintiff's claims of disabling pain:

21   There is also a lack of medical documentation of an
22   impairment which would cause extreme pain or pain which
23   could compromise [Plaintiff's] ability to perform work-
24   related activities.  [She] did not pursue persistent relief
25   for her alleged disabling impairments, as evidenced by the
26   gaps in the treatment record.  There is no evidence of
27   disuse muscle atrophy or wasting commonly associated with
28   severe pain.  Also, there is no evidence of attention,

9

1      concentration, or cognitive deficits from pain.  There is no

2      statement by a physician that [Plaintiff] experienced severe

3      and unremitting pain.  Therefore, I find that [her]

4      allegations of pain and limitation are not fully credible

5      and not consistent with the medical record.  Therefore, it

6      is determined that these factors indicate that [her]

7      subjective complaints and alleged limitations are less than

8      fully credible.

9 (AR 18.)  Plaintiff does not challenge this adverse credibility

10 determination, and the bases the ALJ articulated for it are supported

11 by the evidence of record.  (*See* AR 132-98 (containing the whole of

12 Plaintiff's medical record); 208-11 (noting the examining

13 psychiatrist's observation that Plaintiff was not under the care of a

14 psychiatrist or counselor); 245-50 (memorializing the examining

15 psychologist's conclusion that Plaintiff was malingering).)  These

16 were legally-sufficient reasons for discounting Plaintiff's

17 credibility.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir.

18 2001)(upholding adverse credibility finding where ALJ cited the

19 claimant's "lack of cooperation at the hearing" as well as "her

20 tendency to exaggerate, her inconsistent statements, and her lack of

21 cooperation during consultative examinations").

22    Plaintiff's claim that the ALJ erred in analyzing the medical

23 evidence cannot be considered apart from the backdrop of this

24 unchallenged adverse credibility determination.  A treating

25 physician's opinion on the nature and severity of an impairment will

26 be given controlling weight if it is "well-supported by medically

27 acceptable clinical and laboratory diagnostic techniques and is not

28 inconsistent with the other substantial evidence in [the] case

10

1 record." 20 C.F.R. § 416.927(d)(2). As the Ninth Circuit has noted,
2 however:

> 3   [A]n ALJ need not give controlling weight to the opinion of
> 4   a treating physician. Although a treating physician's
> 5   opinion is generally afforded the greatest weight in
> 6   disability cases, it is not binding on an ALJ with respect
> 7   to the existence of an impairment or the ultimate
> 8   determination of disability.

9 *Batson*, 359 F.3d at 1194-95 (citation and internal quotation marks
10 omitted). The ALJ need not accept the opinion of any physician, even
11 that of a treating physician, if that opinion is unsupported by
12 clinical findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th
13 Cir. 2002); *see also Coats v. Heckler*, 733 F.2d 1338, 1340 n.4 (9th
14 Cir. 1984)(noting that the weight to be accorded a doctor's opinion
15 generally depends upon the extent to which that opinion is supported
16 by clinical findings). Indeed, "[t]he ALJ may disregard the treating
17 physician's opinion whether or not that opinion is contradicted."
18 *Batson*, 359 F.3d at 1195 (citation omitted).

19     After reviewing the available medical evidence, the ALJ
20 summarized the limitations that Plaintiff's treating physician
21 assessed:

> 22   In his assessment of October 5, 2003, Bruce Koyle, M.D.,
> 23   noted that [Plaintiff] has a long-standing diagnosis of
> 24   fibromyalgia with 11 out of 18 tender points. He noted that
> 25   [Plaintiff] has been noncompliant with her treatment. He
> 26   opined that [she] can lift less than 10 pounds, stand and/or
> 27   walk at least two hours in an eight-hour workday, and sit
> 28   less than six hours in an eight-hour workday. No

1    pushing/pulling restrictions were assessed.  [Plaintiff] can
2    perform postural activities on an occasional basis.  She can
3    occasionally perform reaching and fingering activities.  She
4    cannot engage in overhead reaching.  She cannot work with
5    temperature extremes, vibration, with machinery, heights, or
6    fumes.

7  (*See* AR 15 (citation to record omitted).)  A review of the check-the-
8  box form that Dr. Koyle completed supports the ALJ's summary.  (*See* AR
9  235-44.)

10      The ALJ then explained the weight that he would give the treating
11  physician's opinion:

12      [Dr. Koyle] noted significant functional limitations.
13      Despite this conclusion, I find that there are no supporting
14      medical findings contained either in this report or
15      elsewhere in the record.  Doctor Koyle also did not cite
16      objective findings that relate to the restrictions assessed;
17      and his findings appear to be based upon [Plaintiff's]
18      recitation of her subjective complaints.  There is no
19      indication that this physician actually examined [her] at
20      the time of the completion of this form, which suggests that
21      his findings were an accommodation in part by the physician
22      in an attempt to assist [Plaintiff] in January 2003, when
23      she requested completion of a disability form.

24  (AR 17 (citation to record omitted).)  "Since the overwhelming weight
25  of the medical treatment [notes] refute this view," the ALJ explained
26  that Dr. Koyle's opinion would be "accorded no evidentiary weight."
27  (AR 17.)  The Court concludes that the ALJ's rejection of Dr. Koyle's
28  opinion was legally justifiable.

12

1    First, the ALJ's suspicion that Dr. Koyle completed the form "in
2    an attempt to assist [Plaintiff] in her disability claim" is supported
3    by the evidence. (*See* AR 17.)   There is irrefutable evidence that
4    Plaintiff had attempted to put words in her doctors' mouths.   The
5    record reflects that Plaintiff began asking Dr. Koyle to complete
6    disability forms on her behalf on January 7, 2003. (*See* AR 132.)
7    When, nine months later, he still had not done so, *Plaintiff* filled
8    out a predictably dismal functional limitation form on September 26,
9    2003--leaving only a blank for her doctor's signature--and submitted
10   it to an unidentified physician at Kaiser Permanente; that doctor,
11   however, refused to sign it. (*See* AR 264-65; *see also* AR 229-33.)
12   When Dr. Koyle saw Plaintiff nine days later on October 5, 2003, he
13   evidently acquiesced: completing a functional capacity assessment
14   without even conducting a physical examination.[1]   (*See* AR 236-44.)   In
15   these circumstance, even a treating physician's opinion may be
16   rejected. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.
17   1996)(holding that an ALJ could reject a treating physician's report
18   where it evidently was written for the purpose of helping a claimant
19   obtain SSI); *accord Flores v. Apfel*, No. CV 96-7782 IH(JG), 1997 WL
20   913729, at *4 (C.D. Cal. Dec. 18, 1997).

21   Moreover, as the foregoing summary of the pertinent portions of
22   the decision reflects, the ALJ did *not* reject all of Dr. Koyle's
23   conclusions, despite Plaintiff's protestations to the contrary. (*See*

24

25   [1]   In the disability form Dr. Koyle completed on October 5, 2003,
26   he estimated that he had seen Plaintiff approximately six times. (*See*
     AR 236).   The medical records show that Dr. Koyle in fact saw
27   Plaintiff three times previously; the record does *not* reflect that he
     performed a physical examination on any of these occasions. (*See* AR
28   132, 137, 150.)

1  Joint Stip. at 7.)   Indeed, the ALJ actually credited Dr. Koyle's
2  conclusions to the extent they were consistent with the record as a
3  whole.  (*See* AR 15.)   Instead, the ALJ rejected the treating
4  physician's assessment of *functional limitations,* which was made on a
5  check-the-box form with almost no explanation of his findings.  (*See*
6  AR 17, 241-44.)   The record supports the ALJ's conclusion.   In
7  response to the prompt, "What medical/clinical finding(s) support your
8  conclusions [...]?" Dr. Koyle merely wrote "Pt. Has fibromyalgia on
9  exam."[2]  (AR 242.)   Where similar prompts appeared later on the check-
10 the-box questionnaire, Dr. Koyle left those items blank.  (*See* AR 242-
11 44.)   The finding that a claimant suffers from fibromyalgia is not, by
12 itself, sufficient to justify functional limitations that are
13 tantamount to a conclusion of disability.[3]   The absence of objective
14 clinical findings was a sufficiently specific and legitimate reason to
15 reject Dr. Koyle's opinion as to the extent of Plaintiff's functional

---

19      [2]   It bears emphasis that the solitary "finding" to which Dr.
20 Koyle referred--*i.e.*, that Plaintiff evinced at least 11 of 18 tender
   points on examination--was not made by him, but by a neurologist, Dr.
21 Jennifer Smith, nearly one year earlier.  (*See* AR 237, 264.)   Twice
22 the ALJ solicited an assessment of functional limitations from Dr.
   Smith, but she failed to respond either time.  (*See* AR 254-56, 264-
23 65.)

24      [3]   *See Kleffman v. Reliance Standard Life Ins. Co.*, No.
25 C04-5430FDB, 2005 WL 1383964, at *2 (W.D. Wash. June 08, 2005)
   (accepting a physician's conclusion that even a valid fibromyalgia
26 diagnosis was "not necessarily disabling")*; see also May v.*
   *Metropolitan Life Ins. Co.*, No. C 03-5056 CW, 2004 WL 2011460, at *8
27 (N.D. Cal. Sept. 9, 2004)(referring to "the indisputably true
   statement that not all people diagnosed with fibromyalgia are
28 disabled").

1  limitations.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.
2  1995).[4]

3      Finally, the ALJ noted that--absent evidence that Dr. Koyle
4  actually examined Plaintiff at the time he completed his October 2003
5  functional limitations assessment--his conclusions appeared to be
6  based on subjective symptom complaints that already had been found to
7  be not credible.  (*See* AR 17.)  Because "[f]ibromyalgia [...] is
8  diagnosed entirely on the basis of patients' reports of pain and other
9  symptoms," *see Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004),
10 and given the absence of objective findings in Dr. Koyle's report, the
11 ALJ's well-supported rejection of Plaintiff's subjective claims was
12 sufficient to justify rejecting the treating physician's assessment of
13 Plaintiff's limitations.  *See Powell v. Chater*, 959 F.Supp. 1238, 1243
14 n.5 (C.D. Cal. 1997)(quoting a physician's opinion that "[t]he
15 diagnosis of both fibromyalgia and chronic fatigue syndrome depend
16 upon the credibility of the subjective complaints of the claimant").
17 Given that the one physical examination Plaintiff underwent indicated
18 only modest limitations and prompted the recommendation of
19 conservative treatment (*see* AR 144), the ALJ's skepticism of Dr.

20

21 _____

22      [4]  *See also Hixson v. Apfel*, No. C 99-4930 JL, 2000 WL 1897293,
   at *5 (N.D. Cal. Dec. 14, 2000)(concluding that the ALJ properly
23 discounted a treating physician's opinion which "gave great weight to
   [the claimant's] subjective complaints, which the ALJ found not to be
24 credible" and where "there were no objective clinical findings to
   support the limitations alleged" by the claimant); *Khougaz v. Apfel*,
25 No. C 98-4674 SI, 2000 WL 274187, at *5 (N.D. Cal. Feb. 29, 2000)
   (holding that the ALJ properly rejected a claimant's treating
26 physician's opinion that her "severe arthritis" limited her to
   sedentary work, where that opinion "did not appear to be based on any
27 objective clinical tests" and was contradicted by the objective
   testing of examining physicians).
28

                                  15

1  Koyle's assessment of Plaintiff's limitations was supported by
2  substantial evidence.

3        In the end, the Court concludes that the ALJ's rejection of the
4  treating physician's assessment of Plaintiff's functional limitations
5  was proper in light of his determination that Plaintiff's testimony
6  about her limitations and subjective symptoms was not entirely
7  credible. *See Siska*, 2002 WL 31750220, at *3. For that reason, the
8  Court rejects Plaintiff's claim that the ALJ gave unduly short shrift
9  to the opinion of her treating physician, Dr. Koyle.

10 B.   The ALJ Properly Weighed The Daily Activities Questionnaires
11      Completed By Two Lay Witnesses

12       Plaintiff also argues that the ALJ "ignored without explanation"
13 two Daily Activities Questionnaires completed on her behalf: one from
14 one of her sons, and another from a friend. (*See* Joint Stip. at 11.)
15 Both of these witnesses attested to Plaintiff's pain, her observed
16 behaviors, and her daily activities. (*See* Joint Stip. at 105-10; 117-
17 22.) Plaintiff's contention does not warrant disturbance of the
18 decision.

19       "[L]ay witness testimony as to a claimant's symptoms or how an
20 impairment affects ability to work *is* competent evidence, and
21 therefore *cannot* be disregarded without comment." *Nguyen v. Chater*,
22 100 F.3d 1462, 1467 (9th Cir. 1996)(italics in original and internal
23 citations omitted). This is merely a specific instance of the general
24 rule that an ALJ must "consider observations by non-medical sources as
25 to how an impairment affects a claimant's ability to work." *Sprague
26 v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Moreover, pursuant to
27 *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993), an ALJ is
28 obligated to give reasons germane to a lay witness's testimony before

16

1  discounting it, and cannot dismiss the testimony of lay witnesses

2  solely because he has found the claimant's testimony incredible.

3       An ALJ is, however, permitted to reject lay testimony if he gives

4  legitimate reasons for doing so.  *See Nguyen*, 100 F.3d at 1467.

5  Although an ALJ should mention lay witness testimony in his decision,

6  his failure to do so is not always error.  *See Vincent v. Heckler*, 739

7  F.2d 1393, 1395 (9th Cir. 1984).  When, for example, lay testimony

8  conflicts with medical evidence, the ALJ may discount or even ignore

9  such testimony.  *See id.; see also Lewis v. Apfel*, 236 F.3d 503, 511

10 (9th Cir. 2001).

11      Daily Activities Questionnaires were completed by Sonny Gobert,

12 Plaintiff's son, and Jesus Claudio, a friend.  (*See* AR 105-10, 117-

13 22.)  Both of these witnesses agreed that Plaintiff's activities

14 included preparing some meals, doing some grocery shopping and chores,

15 watching television, and reading in bed.  (*See* AR 107-08, 117-20.)

16 Plaintiff's claim that the ALJ "ignored" these letters is simply

17 incorrect.  (*See* Joint Stip. at 11.)  Rather, the ALJ considered these

18 lay witnesses as reliable sources of *what* Plaintiff did with her time,

19 citing both of their questionnaires in his discussion of Plaintiff's

20 daily activities.  (*See* AR 17.)

21      Plaintiff contends, however, that the ALJ erred by failing to

22 credit Mr. Gobert's and Mr. Claudio's comments as to *why* her

23 activities were so limited.  (*See* Joint Stip. at 11.)  It is true that

24 both witnesses noted that Plaintiff could not sleep because of her

25 pain, (*see* AR 105-06, 117-18), and that her pain prevented her from

26 completing household chores.  (*See* AR 107, 119, 121).  Mr. Gobert

27 added that Plaintiff had become forgetful and expressed a desire to

28 die.  (*See* AR 109-10.)  If the ALJ had rejected this part of the lay

17

1  testimony solely because it had relied upon the self-reporting of
2  symptoms from a claimant who already had been determined to be not
3  credible, the error would require reversal.  *See Dodrill*, 12 F.3d at
4  918-19.

5      A review of the decision suggests, however, that the ALJ did *not*
6  reject any of the lay evidence on the ground that it was based on the
7  subjective reporting of an unreliable claimant.  Instead, the ALJ
8  rejected some of the lay evidence because it was inconsistent with the
9  medical evidence of record.  Immediately after summarizing the lay
10 witnesses' account of Plaintiff's daily activities, the ALJ observed:

11     Although later statements indicate that [Plaintiff] is
12     bedridden due to disabling pain, the record does not provide
13     evidence of an ongoing or worsening condition that would
14     significantly reduce [her] functioning at this time.
15     Treating source records note that [she] reported improvement
16     in her pain symptoms with vitamin B-12 injections and
17     Lidoderm patches.  Further, no difficulties with regard to
18     [Plaintiff's] ability to sit, stand, walk, use her hands, or
19     concentrate were noted when [she] was interviewed at the
20     Social Security field office at the time of filing of her
21     application.
22 (*See* AR 17 (citations to record omitted).)  The record supports the
23 ALJ's assessment of this conflict between the medical evidence and the
24 observations of these lay witnesses.  (*See* AR 78-82, 137.)  This
25 inconsistency was a legitimate reason for rejecting this portion of
26 the evidence.  *See Lewis*, 236 F.3d at 511.

27     Finally, the Court concludes that any error would have been
28 harmless in the circumstances of this case.  The terse lay

18

1   questionnaires completed by Mr. Gobert and Mr. Claudio were, in all

2   salient respects, cumulative of the questionnaire that Plaintiff

3   completed.  (*Compare* AR 105-10 and AR 117-22 *with* AR 111-16.)  "[A]n

4   ALJ's failure to explain his rejection of [lay] testimony constitutes

5   harmless error when that testimony does little more than corroborate

6   [the] plaintiff's testimony and adds nothing of substance to the

7   record." *See Orcutt v. Barnhart*, No. ED CV 04-889 PLA, 2005 WL

8   2387702, at *10 (C.D. Cal. Sept. 27, 2005)(citing 20 C.F.R.

9   §§ 404.1513(d), 416.913(d) and S.S.R. 88-13).  Thus, any error was

10  harmless.  *See Batson*, 359 F.3d at 1197.

11      In sum, the Court concludes that the ALJ's partial rejection of

12  the lay evidence was justified by the conflict between that evidence

13  and the medical evidence of record.  For that reason, and because any

14  error was harmless in the circumstances of this case, the ALJ's

15  handling of the lay evidence does not require reversal.

16                                    V.

17                                CONCLUSION

18      For the reasons set forth above, this Court finds that the

19  Agency's findings are supported by substantial evidence and are free

20  from material legal error.  Therefore, the Court AFFIRMS the decision

21  of the Agency and enters summary judgment in favor of the Agency and

22  against Plaintiff.

23      DATED:    January __23__, 2006.

24                                    /s/

25                              _____
                                PATRICK J. WALSH
26                              UNITED STATES MAGISTRATE JUDGE

27

28  S:\PJW\Cases-Soc Sec\GRAHAM, D 885\Memo Opinion.wpd

                                    19